GENERAL TEAMSTERS, CHAUF-
FEURS AND HELPERS, LOCAL UN-
ION NO. 782, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN
AND HELPERS OF AMERICA, Peti-
tioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BLUE CAB COMPANY
and
Village Cab Company, Respondents,

General Teamsters, Chauffeurs and Help-
ers, Local Union No. 782, International
Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of Ameri-
ca, Intervenor.

BLUE CAB COMPANY
and
Village Cab Company, Petitioners,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 20110, 20148, 20253.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 23, 1966.
Decided Feb. 7, 1967.

Mr. Sheldon M. Charone, Chicago, Ill., with whom Mr. Herbert S. Thatcher, Washington, D. C., was on the brief, for petitioner in No. 20,110 and intervenor in No. 20,148. Mr. David S. Barr, Washington, D. C., also entered an appearance for intervenor in No. 20,148.

Mr. Hans J. Lehmann, Attorney, National Labor Relations Board, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Elliott Moore, Attorney, National Labor Relations Board, were on the brief for petitioner in No. 20,148 and respondent in Nos. 20,110 and 20,253.

Mr. Richard L. Marcus, Chicago, Ill., of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of court, with whom Mr. Charles L. Bucy, Washington, D. C., was on the brief for petitioners in No. 20,253 and respondents in No. 20,148.

Before PRETTYMAN, Senior Circuit Judge, TAMM and ROBINSON, Circuit Judges.

I

TAMM, Circuit Judge:

These are three labor relations cases. The National Labor Relations Board, after proper proceedings, held that the Blue Cab Company and the Village Cab Company had violated Sections 8(a) (1), (3) and (5) of the National Labor Relations Act.[1]

In case No. 20,110, the Union, General Teamsters, Chauffeurs and Helpers, Local Union No. 782, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, seeks reversal of the Board's action on several grounds. The Union alleges that the Board erred in its refusal to permit an inspection of the employers' financial records and in its ruling that it was unnecessary to decide whether the employers had refused to bargain with respect to severance pay and a demand for a drivers' damage bond.

In case No. 20,253, Blue Cab Company and Village Cab Company, the employers in the labor dispute, challenge the correctness of the Board's rulings that they, the employers:

1. Violated Section 8(a) (1) of the Act by threatening employees with reprisals and promising them benefits to induce them to abandon representation by the Union.

2. Violated Sections 8(a) (1), (3) and (5) of the Act by discharging their driver-employees and thereafter requiring drivers to execute a lease agreement, purportedly as independent contractors, in order to avoid bargaining with the Union.

3. Further violated Sections 8(a) (1) and (5) of the Act by reducing employees' compensation; by introducing a different system of payment without notifying and consulting with the Union; and by terminating its collective bargaining agreement without notifying federal and state agencies, as required by Sections 8(d) (3) and (4) of the Act.

The companies also challenge, generally, the validity and propriety of the Board's order.

In case No. 20,148, the National Labor Relations Board petitions for enforce-

---

1. National Labor Relations Act, as amended, 61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 158(a) (1), (3), (5). See Appendix.

ment of its order which, in substance, calls upon the Blue Cab and Village Cab companies to cease and desist from the unfair labor practices found and from in any other manner interfering with, restraining, or coercing employees in the exercise of their rights guaranteed under the Act. The Board's order further requires the cab companies to bargain in good faith with the Union; to resume taxicab operations as they were conducted prior to July 1, 1963 (the date of the termination of the prior labor contract); to cancel lease arrangements made with drivers; to reinstate, and to continue to operate under the terms of, the labor agreements in effect on June 30, 1963, until such time as they may be lawfully terminated pursuant to the provision of Section 8(d) of the Act; to offer reinstatement to discharged drivers, with back pay; and to post appropriate notices.

## II

 The Board had before it as the basis for its decision a great volume of evidence. The trial examiner had heard the testimony of more than twenty witnesses, and this transcribed testimony produced a record exceeding seven hundred pages. A number of exhibits supplemented the oral testimony. Our careful review of the entire record and the Board's order convinces us that the Board's decision is supported by substantial evidence on the record considered as a whole and that the relevant evidence was such that a reasonable mind might accept it as adequate to support the Board's conclusions. Washington, Virginia & Maryland Coach Co. v. National Labor Relations Board, 301 U.S. 142, 57 S.Ct. 648, 81 L.Ed. 965 (1937); Consolidated Edison Co. et al. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

 Additionally, the proceedings before the examiner and the Board fulfilled all procedural requirements. The Board accepted with some modification the examiner's findings, conclusions, and recommendations. In those instances where its conclusions differ from those of the examiner, we are satisfied that they were proper and within the orbit of the Board's authority to reach differing conclusions from those of the hearing examiner. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 492, 71 S.Ct. 456, 95 L.Ed. 456. Four Board members as "experts devoting their whole skill in labor-management problems unanimously and realistically considered the entire record" [2] and in their dutiful administration of the Act reached their decision accordingly.

 This court must give appropriate consideration to the broad expertise of the Board:

"Everyday experience in the administration of the statute gives it familiarity with the circumstances and backgrounds of employment relationships in various industries, with the abilities and needs of the workers for self organization and collective action, and with the adaptability of collective bargaining for the peaceful settlement of their disputes with their employers." National Labor Relations Board v. Hearst Publications Inc., 322 U.S. 111, 130, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944).

Our reviewing power is further restricted:

"We have repeatedly held that Congress, by providing [in] § 10(c), (e) and (f), of the National Labor Relations Act, that the Board's findings 'as to the facts, if supported by the evidence, shall be conclusive', precludes the courts from weighing evidence in reviewing the Board's orders, and if the findings of the Board are supported by evidence the courts are not free to set them aside even though the Board could have drawn different inferences." National Labor Relations

2. Warehousemen and Mail Order Employees Local No. 743 v. National Labor Relations Board, 112 U.S.App.D.C. 280, 302 F.2d 865, 869 (1962).

**664**

Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305 (1942).

This limitation on and of court review of decisions of administrative agencies has been reviewed, restated, and re-emphasized by the Supreme Court during the past year. See Consolo v. Federal Maritime Commission, 383 U.S. 607, 623, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

Since we find that the Board's action is supported by substantial evidence, and since the record is completely devoid of any indication of arbitrary or capricious conduct and reflects no abuse of discretion, we affirm the Board's action in its entirety. The petitions for review are denied. The Board's order will be enforced in full.

It is so ordered.

### APPENDIX

§ 158. Unfair labor practices

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

\* \* \* \* \* \*

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement

when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: *Provided further,* That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

\* \* \* \* \* \*

(5) to refuse to bargain collectively with the representative of his employees, subject to the provisions of section 159(a) of this title.